# CHARLESTON.

JAMES A. WILSON v. CITY OF ELKINS.

Submitted April 27, 1920.   Decided May 4, 1920.

1. MUNICIPAL CORPORATIONS—*Whether a Sufficient Warning of a Defect in a Street Was Given is for the Jury.*

The liability of a municipal corporation for an injury to a person rightfully using one of its streets, occasioned solely by a defect therein of such character as to deprive it of the quality of reasonable safety, being absolute, it is for the jury to say, in an action for resulting damages, whether the defect was so indicated by a marker, guard-rail or other means, as to give adequate warning of its existence, character and location and thus bar right of recovery on the ground of negligence on the part of the plaintiff, constituting the proximate cause of his injury or contributing thereto, unless the evidence so clearly and decisively shows sufficiency of such warning, that the court may declare it as a matter of law. (p. 382).

86 W. Va.

2.  SAME—*Whether Warning of a Defect in Street Was Sufficient a Question for the Jury.*

Whether a board sticking up from a soft place in a street, large and deep enough to let a wagon-wheel go down in it so as to cause the wagon to upset or turn over on its side, dry and smooth on the surface and even with the surrounding surface of the street, is sufficient warning of the defect, is an issue proper for jury determination.  (p. 382).

3.  SAME—*Whether Defective Street With the Warning Given is Reasonably Safe is the Question in Action for the Resulting Personal Injury.*

In such case, the crucial question is whether the defective street, with the warning given, is reasonably safe for use and travel, notwithstanding the defect.  (p. 382).

4.  SAME—*Warning of Defect in Street Must be Maintained.*

As liability for injury occasioned by an actionable defect in a street is absolute, warning of the existence of such a defect must be maintained as well as put up in the first instance. (p. 382).

5.  TRIAL—*Where Personal Injury Results from Actionable Defect in Street or Plaintiff's Negligence, Refusal of Instruction on Theory of Inevitable Accident is not Error.*

If, in such an action, the injury is shown to have been occasioned by an actionable defect in a street, or the negligence of the plaintiff, it is not error to refuse an instruction which would propound the theory of injury by inevitable accident , or another one which would absolve the defendant from duty to insure the safety of persons using its streets.  (p. 382).

6.  SAME—*Misleading Instructions May be Refused.*

Instructions that would tend to mislead the jury, if given, may properly be refused.  (p. 382).

7.  EVIDENCE—*Testimony as to Physical Condition of Party Based on Observation of His Conduct is Admissible.*

Testimony of witnesses as to the physical condition of a party to an action, when relevant and material, based upon their observation of his conduct and actions is admissible. (p. 383).

8.  APPEAL AND ERROR—*Verdict Held not Excessive Although Contradictions of Plaintiff's Testimony as to Extent of Injury are Supported.*

A verdict dependent as to the quantum of damages, upon permanency of the plaintiff's injury, supported by evidence

other than the testimony of the plaintiff, will not be set aside as being excessive, even though his testimony as to the extent of his injury is contradicted by extra-judicial admissions and conduct, so explained by him as to set forth a reasonable motive for them.  (p. 383).

(LYNCH, JUDGE, absent).

Error to Circuit Court, Randolph County.

Action by James A. Wilson against the City of Elkins. Verdict and judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Arnold & Arnold,* for plaintiff in error.

*A. M. Cunningham* and *Samuel T. Spears,* for defendant in error.

POFFENBARGER, JUDGE:

In this action for damages consequent upon a personal injury occasioned by a defect in a city street, the principal defenses are that the defendant exercised reasonable care both in the repair work to which the defect was incident and in warning as to its existence, and that the plaintiff sustained no actionable injury, or, if any, not enough to justify the verdict for $1,000.00, which the jury awarded him.

The defect was a soft place in an unpaved street, large enough for a wagon wheel to drop into and deep enough to cause a wagon to upset, in the event of the dropping of one of its wheels into it, and made by excavation for repair of a water-pipe and refilling with wet and soft earth, a sort of muck. This was done in hot weather and a thin crust on top hardened, but beneath it there was no support for a heavy wagon-wheel. The surface of the fill was level with the surface of the street and smooth. According to the testimony of witnesses for the defendant, a sharp pointed board, from three to five feet long, was stuck and left standing in the place as a warning. As described by one witness, the board was about six inches wide at one end and tapered to a point and about half or more of it stood above the surface. The accident occurred the next day after the excavation and filling were done, and the plaintiff swears he saw no board sticking up there, and that he is positive there was none. The jury might well have found from the evidence, that it had

been placed there and probably that it was still standing when the accident occurred.

The plaintiff was the driver of a covered ice-wagon carrying something less than 1,000 pounds of ice. When a front wheel dropped into the hole, he started to fall forward, as he thinks, and the wagon turned over on its side, the ice in it having slid forward as the wheel went down. All of his body, except his head, was under the wagon top and the ice. After he was rescued, it was found that he had sustained no fractures of any bones, nor, so far as the evidence discloses, any dislocations. His left shoulder and one hip were severely bruised, the former much worse than the latter. He swears his shoulder is still tender and gives him considerable pain and discomfort. He lost only a few days time and the professional charges on account of medical attention and treatment given him, were small.

Complaint is made of the refusal of five instructions asked for by the defendant, that, respectively, would have directed a verdict for it; and advised the jury that the city was under no duty to place a guard at the defect to prevent removal of the board, if it was put up; that, if it had observed due care and proper precaution to mark and distinguish the defect so as to prevent accident, it had performed its duty in the premises, and the verdict should be for the defendant; that the city's obligation to keep its streets in order and repair does not make it an insurer of the safety of persons using them; and that, if the injury was the result of a pure accident, there could be no recovery.

All were properly refused. It was for the jury to say whether a board stuck up in the center of a defect three or four feet in diameter and not otherwise disclosed was a reasonable precaution. To have told the jury the city was under no duty to maintain a guard at the place of the accident would have been clearly misleading. It would have implied, that, after having marked the defect, the city was under no further duty. In the case of injury by a defect in one of its streets, a city's liability is absolute, unless the injured party has caused his own injury or contributed to it, by his negligence. For the same reason, the instruction absolving from liability, by reason of due care to mark and distinguish the defect, was properly refused. The warning must be maintained as well as put up, to bar recovery on the

ground of negligence on the part of the injured person, unless his knowledge of the defect is otherwise shown. There was no claim of right to recover on the theory of municipal insurance. Besides, the jury were told in instructions given, that there could be no recovery unless the jury should find neglect of duty on the part of the city, causing the injury. There was no evidence tending to prove injury by pure or inevitable accident. There was a serious defect in the street, and the proper issue was whether its location was so indicated as to give adequate warning of its existence and thus make the street reasonably safe. With reference to this issue, the court gave a proper instruction, of its own volition. It is criticised only because it left it to the jury to say whether the board sticking up from the defect was sufficient to give adequate warning. The court could not have properly held the warning sufficient, as matter of law. The surface was smooth, dry and apparently safe. If the board was standing, it did not indicate the extent or boundaries of the defect. To have driven within a foot or two of it would have been disastrous.

The extent and duration of the injury was an important issue in the case, and the plaintiff's testimony to pain, suffering and lameness of the arm, long after the accident, was supplemented by that of others who said they had observed manifestations or evidence of it in his conduct, not his declarations, the court having rejected their evidence as to the latter. This evidence was properly admitted. *Chicago etc. R. Co.* v. *Van Vleck,* 143 Ill. 480; *Salem* v. *Webster,* 192 Ill. 369; *Will* v. *Mendon,* 108 Mich. 251; *Collins* v. *Janesville,* 111 Wis. 348; 17 Cyc. 87; Wigmore Ev., secs. 220, 221 & 225.

Arguments against the verdict, on the ground of excessiveness, is predicated upon evidence tending to show the plaintiff's injuries were too slight to justify it and also that his testimony as to the extent and duration of his injury is self-contradicted, as well as contradicted by other witnesses. After he had testified in a former trial of his case, claiming severe injury, he was examined by a physician who had heard his testimony, in the presence of another who had also heard it, to ascertain whether he could be safely entrusted with his duties as a brakeman. They could find nothing wrong with him, and they say he told them he

had pretended greater injury in his testimony than he had suffered. For them, he raised his arms above his head until his hands touched and said he felt no pain. He admits it in his testimony in this record, but says he purposely deceived them and made false statements to them, to prevent them from causing discontinuance of his employment, he having a wife to support and being unable to lose any time. One of them denies the possibility of such deception. His resumption of work two or three days after the injury and continuance thereof, with only slight interruptions, if any, tend to sustain the city's contention and the opinions of the two physicians. His explanation is that he was poor and had dependents and worked when really unable to do so, from necessity. Another physician swears he came to see him about his injuries several times, that his shoulder was badly bruised and seemed to be very tender, stiff and painful, and that it was still in bad shape when he last saw it. This physician was examined as to permanency of the injury and expressed the opinion that it would be permanent, if the pain was still felt at the date of the trial. He was hurt in September, 1914, and a sister-in-law, who lived with him and her sister until January, 1917, a period of about two years and five months, swears his arm was in bad condition when she left them.

As to whether he could deceive the physicians who examined him, the jurors were equally as well qualified to say as judges. His credibility as a witness was a question for them also. He worked and earned wages. That is a circumstance tending to contradict his testimony as to his condition, but it is not conclusive. Many a man feeling the necessity of labor, notwithstanding pain and discomfort incident thereto, goes on and performs it. Two men who worked with him swear his conduct indicated soreness and pain in his arm or shoulder. The fact that the jury in a former trial assessed his damages at only $375.00 is not conclusive. The evidence may have been somewhat different. Besides, there is no standard by which to determine which of the two verdicts more closely approximates a just, fair and reasonable award of damages. Taking into

consideration all of the evidence, facts and circumstances, we are unable to say the verdict is excessive.

The judgment will be affirmed.

*Affirmed.*