J. WESLEY THOMPSON *et al.*, *Appellants*, v. TOWN OF
FROSTPROOF, *Appellee.*

Division B.

Opinion Filed February 7, 1925.

1. The purpose of a decree validating and confirming bonds
   under the law of our State is to put in repose any question
   of law or fact that may be raised affecting the validity of
   such bonds.

2. In bond validation suits under our law any question that goes
   to the power to issue and validity or regularity of the issu-
   ance of such bonds may be properly raised.

3. Bonds cannot be legally voted to improve streets where no
   streets in law exist and it is not made to appear that they
   ever can or will exist.

An Appeal from the Circuit Court for Polk County;
John S. Edwards, Judge.

Order reversed.

*George W. Oliver,* for Appellants;

*Peterson & Carver* and *L. C. Johnson,* for Appellee.

TERRELL, J.—Pursuant to charter provisions the Town
of Frostproof, in Polk County, voted to issue $115,000.00
of bonds for street paving, $10,000.00 of bonds for erecting
a town hall, $10,000.00 of bonds for water works, and
$5,000.00 of bonds to fund the floating debt of the town.
A decree was entered by the Circuit Court validating these
bonds under proceedings authorized by Section 3296 *et
seq.*, Revised General Statutes of Florida.

Appellants by answer resisted the petition to validate as

to the paving bonds on the ground that the paving pro-
posed to be done was out of all proportion to the benefits
flowing from such paving to the property owners, that the
cost of such paving would in many instances be more than
the abutting property was worth, thereby resulting in the
confiscation of appellants' property, that in many in-
stances the Town of Frostproof has acquired no right of
way and in fact no streets have been designated where such
paving is proposed to be done, that there are no such streets
in said town as some of those proposed to be paved, that
the Town of Frostproof has taken no step to acquire rights
of way nor have the owners authorized said town to cross
or improve by paving such streets over their lands where
none have been acquired, and that there exists no public
necessity for acquiring rights of way and paving where
such streets do not exist.

A motion to strike the answer was granted, and appeal
taken from the order granting such motion. The motion
to strike alleges that the matters of defense' set up in the
answer in no, respect show that the bonds are invalid, and
if they did they are not proper to be raised in a validation
proceeding.

Statutory procedings for validating municipal and
other bonds are new in the law, and while our courts have
not been often called on to construe them, they have a well
defined purpose and meaning. Chapter 6237, Acts of 1911,
as revised and enlarged by Chapter 6868, Acts of 1915
(now Sec. 3296 *et seq.*, Rev. Gen. Stats. of Fla.) is the law
on the subject in this State.

Validate, validation and validating are all derivatives of
valid, which is defined in the Century Dictionary as mean-
ing to test the validity of, to make valid, confirm, good or
sufficient in point of law, efficacious, executed with the
proper formalities, incapable of being rightfully over-
thrown or set aside, sustainable and effective in law as dis-

tinguished from that which exists or took place in fact or appearance but has not the requisites to enable it to be recognized and enforced by law.  39 Cyc. 1115; Smith v. Mayor, etc. of City of Dublin, 113 Ga. 833, 39 S. E. Rep. 327, where an illuminating discussion of the Georgia law on the same subject is found.

Our statute (Chapter 6868, Acts of 1915) for validating and confirming municipal bonds is said to have been drawn from the Georgia law.  The petition brings in question the right and authority of the municipality or other taxing unit to issue the bonds, together with all proceedings taken in connection with their issue.  The law further requires the State Attorney to *"carefully examine"* the petition to validate "and if it appears to him, or if he has any reason to believe that said petition is defective, insufficient or untrue, or if in his opinion the issuance of the bonds or certificates in question have not been duly authorized he shall make such defense thereto as to him shall seem proper."  The clerk of the court is required to publish for three weeks prior thereto a notice of the time and place of hearing on the petition and by such publication all taxpayers and citizens of the municipality, county or other taxing unit proposing to issue bonds are made parties defendant to said petition and are required to show cause if any they have at such hearing why said bonds should not be confirmed and validated.

At the time and place of hearing on the petition the judge is required to consider all "questions of law and of fact" presented to him in said cause and make such orders in the proceedings as will best conserve the interests of all parties and enable him to render a final decree with the least possible delay.  Any citizen or taxpayer dissatisfied with the decree of the court may appeal to the Supreme Court within twenty days and when docketed in the Su-

preme Court such appeal shall be heard on oral argument within thirty days.

Section 4, affecting the validity of the validating decree, is as follows: ''In the event no appeal is taken within the time prescribed herein, or, if taken, and the decree validating said bonds or certificates is affirmed by the Supreme Court, the decree of the Circuit Court validating and confirming the issuance of the bonds or certificates shall be forever conclusive as to the validity of said bonds or certificates against the county, municipality, taxing district, or other political district or subdivision issuing them, and against all taxpayers and citizens thereof; and the validity of said bonds or certificates shall never be called in question in any court in this State.''

Reviewing the law as above quoted and referred to, we think there can be no escape from the conclusion that the purpose of a decree validating and confirming bonds thereunder is to put in repose any question of law or fact that may be subsequently raised affecting the validity of such bonds. This being our deduction, it is a necessary corollary that in a bond validating suit any question that goes to the power to issue and validity or regularity of the issuance of such bonds is proper to be raised in said suit. In this view we are supported by Smith v. Mayor, etc. of City of Dublin, *supra,* where the court in effect said that while proceedings to validate a proposed issue of bonds is a judicial one it is a prescribed method to ascertain in advance of the issue whether the bonds when issued shall bear on their face the imprint that they have been tested and not found wanting in any particular; this imprint renders further inquiry into their validity unavailing and the property of the taxpayers must be the source of payment.

The only other question necessary to discuss in this connection is whether or not bonds can be legally voted for streets where no streets in fact exist, and where the town

has not acquired rights of way over the land where it, is proposed to construct such streets.

In City of Palmetto v. Katsch, 86 Fla. 506, 98 South. Rep. 352, this court held that before a street can be improved it must be legally established and right of way secured therefor. We think this principle is sound and that bonds cannot therefore be legally voted to improve streets where no streets in law exist and it is not made to appear that they ever can or will exist. We think further that under our statute this question was a proper one to be raised in a suit to validate the bonds as was that of disparity between cost of paving and value of benefits derived therefrom. Detroit, Monroe & T. R. Co. v. Detroit, 49 Mich. 47, 12 N. W. Rep. 904; Spaulding v. Wesson, 115 Cal. 441, 47 Pac. Rep. 249.

From the record we see no way to segregate those streets which could be legally improved from those which cannot be, so the order of the chancellor is accordingly reversed.

WHITFIELD, P. J., AND WEST, J., concur.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., concur in the opinion.