37457. HICKS *v.* STATE OF GEORGIA *et al.*

DECIDED MARCH 20, 1959.

*Harold A. Boggs*, for plaintiff in error.

*Andrew J. Hill, Jr., Marshall L. Allison, Kelley & Mobley,* contra.

TOWNSEND, Judge. It thus appears from the stipulated facts, as against the contentions of the intervenor that Lavonia is the owner of an option to purchase the facilities from Toccoa which, if enforceable, is sufficient to meet the objections urged against validating the Lavonia revenue certificates. If it is not enforceable, then the objections are good. The answer to this single

question is to be found within the Revenue Bond Law, Code (Ann.) Ch. 87-8. Code (Ann.) § 87-806 provides in part: "Any resolution or resolutions authorizing the issuance of bonds under this Chapter to finance in whole or in part the acquisition, construction, reconstruction, improvement, betterment, or extension of an undertaking may contain covenants (notwithstanding that such covenants may limit the exercise of powers conferred by this Chapter) as to: . . . (j) Limitations or restrictions as to the leasing or otherwise disposing of the undertaking while any of the bonds or interest thereon remain outstanding and unpaid. . . The provisions of this Chapter and of any such resolution or resolutions shall be a contract with every holder of said bonds; and the duties of the municipality and the governing body and the officers of the municipality under this Chapter and under any such resolution or resolutions shall be enforceable by any certificate holder by mandamus or other appropriate suit, action, or proceeding at law or in equity."

Under Code (Ann.) §§ 87-808 and 87-809, if a municipality defaults in the payment of principal or interest according to the tenor of its obligations, or shall "default in any material respect in any agreement made with the holders of the revenue bonds" upon application of the aggrieved bondholders or any of them the court may appoint a receiver to "take possession of the undertaking and each and every part thereof."

Thus, two things very clearly appear from this record. First, the provision of the Toccoa resolution of July, 1951, (on which its own bond validation proceeding was based, and which antedates the franchise and option contract between the municipalities) pledges itself, as it is specifically authorized by law to do, not to dispose of its facilities so long as any part of the revenue-anticipation certificates or interest thereon remains unpaid. This constitutes a binding contract between Toccoa and each of its bondholders, which any of the latter may enforce at any time in a court of law or equity if the covenant is broken. Secondly, the very option upon which the City of Lavonia relies provides that "the exercise of the option shall conform in every respect to the provisions of the Gas Revenue Certificate Resolution heretofore adopted by the City of Toccoa." The resolution hav-

ing provided that the City of Toccoa may not sell or otherwise dispose of its gas distribution system or any part thereof so long as any of its revenue-anticipation certificates issued to construct that system remain unpaid, and it appearing that Toccoa issued $1,700,000 worth of certificates of which $1,500,000 are still outstanding, the issuance of $200,000 worth of revenue-anticipation certificates by the City of Lavonia for the purchase of that part of the Toccoa gas distribution system within its corporate limits is clearly unfeasible at this time, unless it is shown that *all* of the revenue-anticipation certificates previously issued by the City of Toccoa would thereby be retired. So long as one of them is outstanding, the holder of that one can enforce its covenant and either prevent the City of Toccoa from selling any or all of its gas distribution system, and thus prevent the acquisition by the City of Lavonia of the property for the purchase of which it seeks to have these bonds validated, or if after the sale of the facilities covered by the Toccoa revenue certificates has been consummated to Lavonia, and such facilities are covered by the Lavonia certificates also, and should there then be a default in the payment of the Toccoa certificates, the holders thereof may proceed against the entire Toccoa system including these facilities under the provisions of Code (Ann.) §§ 87-808 and 87-809, supra. Thus, it appears that the Lavonia certificates sought to be validated in this proceeding would constitute no more than a second lien against the revenue of the facilities in question so long as any of the Toccoa certificates remained unpaid. Accordingly, such a proposition, as a matter of law, is unfeasible and economically unsound. The present holders of Toccoa Gas Revenue Certificates and their assigns will have the prior lien upon all of the facilities of the system until all of the certificates then issued have been paid off. It follows from this that the City of Toccoa is not in a position to divide up its facilities and sell a part of them, pay off certain of its bond holders or even all of them pro rata, and then restrict the lien of the bondholders to that part of the system which it elects not to sell.

Accordingly, the trial court erred in entering up judgment validating the revenue-anticipation certificates of the City of Lavonia.

*Judgment reversed. Felton, C. J., Carlisle, Quillian and Nichols, JJ., concur. Gardner, P. J., dissents.*

GARDNER, Presiding Judge, dissenting. It is my opinion that in order for this case to be fully understood by the bench and bar the entire bill of exceptions should be quoted, but such seems impractical since it would involve twenty-six pages of type-written material. I therefore invite those particularly interested in this case to read the bill of exceptions in toto and it is my opinion that the order and judgment of the judge of the superior court is particularly important. The judge adjudicated the undertaking a self-liquidating project and ruled that the City of Lavonia had authority to issue the gas revenue bonds (the voters having approved them) and that the bonds would be binding obligations of the City of Lavonia.

It is the contention of the defendants in error that the contract between the City of Toccoa and the defendant City of Lavonia concerning gas revenue bonds is legal in every particular and that the hearing before the judge was regular and lawful in every respect. It must be kept in mind that we are dealing here with a contract between the City of Toccoa and the defendant City of Lavonia. Code § 20-704 (4) states that one of the statutory rules of construction of contracts is as follows: "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." It must be kept in mind that Code (Ann.) § 2-6005 provides in part as follows: ". . . if municipalities . . . shall purchase, construct, or operate such electric or gas utility plants from the proceeds of said revenue certificates, and extend their services beyond the limits of the county in which the municipality or political subdivision is located, then its services rendered and property located outside said county shall be subject to taxation and regulation as are privately owned and operated utilities." It must not be overlooked in this connection that the General Assembly of 1956 (Ga. L. 1956, Vol. 1, p. 104) passed a law that no person, firm, or corporation, except municipal corporations and counties of the State of Georgia shall be permitted to contract or operate in interstate commerce within this State any

pipe line for the "transportation, distribution, or sale of natural or manufactured gas without first obtaining from the Georgia Public Service Commission a certificate of public convenience and necessity." *South Georgia Natural Gas Co.* v. *Georgia Public Service Commission,* 214 *Ga.* 174 (104 S. E. 2d 97) has no bearing on the instant case because under the provisions of Ga. L. 1956, Vol. 1, p. 104, municipalities are not required to get a certificate of convenience and necessity from the Georgia Public Service Commission. The following cases cited by counsel for the plaintiff in error were decided prior to the passage of the law hereinabove mentioned (Ga. L. 1956, Vol. 1, p. 104): *Dade County* v. *State,* 75 *Ga. App.* 330 (2) (43 S. E. 2d 434), *Miller* v. *State,* 83 *Ga. App.* 135 (2) (62 S. E. 2d 921), and *Carter* v. *State,* 93 *Ga. App.* 12 (7) (90 S. E. 2d 672).

It must be kept in mind that the revenue certificate law was changed by the General Assembly (Ga. L. 1957, p. 36, et seq.) and gas revenue-anticipation certificates are now called gas revenue bonds. It is contended by the plaintiff in error that although the City of Lavonia voted for the bond issue (there being 594 registered voters, 377 voting for the issue, 4 against and 2 votes being thrown out because they were not properly filled out, thus showing an overwhelming majority of the voters were in favor of the issue), nevertheless the plaintiff in error seeks to deny the authority of the City of Lavonia to procure from the City of Toccoa approximately $20,000 worth of the bonds. The statute provides that the superior court, upon application of twenty-five percent of such bond holders, shall appoint a receiver of the undertaking, under certain regulatory provisions.

It occurs to me that under all the law and facts pertaining to this case the objections of the intervenor Hicks set forth contentions and alleged damages to himself which are too remote ever to become certain damages. It must be kept in mind that under the law as amended, there is not any probability that the holders of the City of Toccoa bonds have or will ever object to the issuance of the City of Lavonia bonds on any of the grounds contended for by the intervenor. The intervenor is not the holder of any bonds of the City of Toccoa and so far as the record reveals he does not intend to be a holder of any City of Lavonia bonds.

310

I have been unable to find, and there has been no case cited by counsel for any party concerned, with facts identical with or similar to the facts of the instant case. The law provides that when, as here, a case of this type is referred to a judge of the superior court, such judge may pass upon the law and facts. This has been done by a judge of the superior court, according to the provisions of law applicable to this case.

It is my opinion that this record shows that the court did not err in denying the prayers of the intervenor, who is not shown to be a stockholder of *any* percent of the bond issue.

I think the bonds may be issued to finance the system as set forth hereinabove, and that the said bonds may be retired as set forth in the order of the judge.

For the reasons set forth I must dissent from the majority opinion.