444 So.2d 16 (1984)
Maurice DeSHA, et al., Appellants,
v.
CITY OF WALDO, Appellee.
No. 63681.
Supreme Court of Florida.
January 12, 1984.
*17 Peter Skoro, Gainesville, for appellants.
William E. Whitley, Gainesville, for appellee.
BOYD, Justice.
This case is brought to us by appeal from a judgment of validation of municipal bonds. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.; § 75.08, Fla. Stat. (1981). Because none of the appellants' arguments demonstrates a sufficient ground to warrant reversal, we affirm.
The City of Waldo instituted these proceedings by filing a complaint seeking validation of municipal bonds in the amount of $595,200 and bond-anticipation notes in an equal amount. The proceeds of the proposed municipal borrowing are to be used to partially finance the improvement and expansion of the City's water supply and waste water collection and treatment systems. The City expects to receive a grant from the United States Farmers Home Administration to pay the remainder of the project costs. In addition to the grant, the Farmers Home Administration is to provide the City with a loan to finance the development and construction of the project, the indebtedness to be evidenced by the bond-anticipation notes referred to above. The bond-anticipation notes will be payable from the proceeds of the issuance of the bonds themselves, which will thus serve as the long-term financing.
The bond issue is proposed under the authority conferred by chapter 166, part III, Florida Statutes (1981). The proposed project contemplates that the bonds will be payable from the net revenue of the City's water and sewer system, from certain municipal excise taxes, and from the guaranteed entitlement portion of the City's income from state revenue sharing under chapter 218, part II, Florida Statutes (1981) and Florida Statutes (Supp. 1982). Thus the bonds proposed to be issued are "revenue bonds" within the meaning of section 166.101(4), Florida Statutes (1981). The bonds are not payable from ad valorem tax revenues; bondholders will not have a lien on the general revenue of the City nor on the facilities to be constructed, but only on the specific revenues pledged. With regard to each of these revenue sources, the pledge of and lien upon the revenues are to be subordinate to the pledge of and lien upon the same revenues arising from prior water and sewer revenue bonds issued in 1965.
Following the filing of the state attorney's answer to the complaint, a group of interested citizens and taxpayers of the City asked for and were granted leave to intervene in defense against the City's complaint. The defendants-intervenors then answered the complaint. The court held a hearing and, overruling the objections of the intervenors, issued a final judgment validating the bonds and notes. The intervening citizens are pursuing the present appeal.
The appellants contend that it was improper for the trial court to validate bonds for expansion of the water and sewer system when there was no mandatory water and sewer connection ordinance in effect. Appellants reason that because such a mandatory use ordinance will be necessary in order to generate sufficient revenues to meet the bond obligations, the existence and validity of the ordinance are matters that must be established as a condition precedent to judicial approval of the municipal borrowing. Appellants further argue that such an ordinance will inevitably need to be adopted because it is required by the City's agreement with the Farmers Home Administration.
The appellants' argument pertains to a matter to be resolved by future decision-making on the part of the City in operating and governing its expanded water and sewer system. As such it is a collateral matter beyond the scope of judicial scrutiny in bond validation proceedings. See City of Gainesville v. State, 366 So.2d 1164 (Fla. 1979). The appellants say that a mandatory connection ordinance is subject to being challenged on numerous substantive *18 and procedural grounds and that, if the City adopts a substantively invalid ordinance or departs from procedural regularity in enacting the ordinance, the financial viability of the project will be undermined. The financial strength of the project, however, is not a matter within the scope of this Court's review. Our review is limited to the questions of "whether the issuing body has the power to act and whether it exercised that power in accordance with law." Town of Medley v. State, 162 So.2d 257, 259 (Fla. 1964). The fact that prospective bond purchasers might find the project questionable because of the lack of a valid mandatory connection ordinance is not a matter of judicial concern in a bond validation proceeding. "It was never intended that proceedings instituted under the authority of this chapter to validate governmental securities would be used for the purpose of deciding collateral issues or those issues not going directly to the power to issue the securities and the validity of the proceedings with relation thereto." State v. City of Miami, 103 So.2d 185, 188 (Fla. 1958). The appellants' reliance on Thompson v. Town of Frostproof, 89 Fla. 92, 103 So. 118 (1925), is misplaced because that case arose in a different context and is distinguishable. Even if the need for a mandatory connection ordinance were relevant to our review, we would presume that the city will enact a valid ordinance.
The appellants also argue that a connection ordinance should be adopted and judicially examined because if the future revenues of the system are insufficient to pay the bonds, the City will have to devote ad valorem tax revenues to their payment, thus rendering the bond issue unconstitutional without referendum under article VII, section 12, Florida Constitution. This argument is without merit. The mere possibility that the City may some time in the future choose to expend general revenue to meet its bond obligations does not render the bonds "payable from" ad valorem taxation. See Tucker v. Underdown, 356 So.2d 251 (Fla. 1978); Town of Medley v. State.
Appellants' next argument is that the trial court erred in validating the bonds on the asserted ground that the City's bond resolution has the effect of amending the 1965 bond issue ordinance and pledges additional revenue to the payment of the bonds issued in 1965. We find the argument to be without merit. The bond resolution, in pledging the City's guaranteed entitlement from state revenue sharing to the payment of the bonds, subordinated that pledge to the pledge and lien of the 1965 bonds. This was not a pledge of additional revenue to the 1965 bonds but was merely in fulfillment of contractual obligations already owed to the holders of the 1965 bonds. The resolution quite properly protects the legal rights of the prior bondholders. The cases cited by appellants for the proposition that a municipal ordinance may not be amended by resolution have no application to this case.
An additional challenge put forth by the appellants is that the trial court improperly excluded their proffered evidence concerning the necessity for and reasonableness of the project. Appellants also contend that the court erred in denying them a continuance for the purpose of developing further evidence on these issues. In summary, the appellants say that their evidence would have shown that the proposed project is not reasonably related to the health, safety, and welfare of the people of the City of Waldo. They argue that the expansion project is unnecessary, that the future mandatory connection ordinance will arbitrarily restrict property rights, and that the purpose of the project is to promote the growth and development of the City. We reject the appellants' arguments because the question of the need for expansion and improvement of Waldo's water and sewer system is a matter to be determined by the governing body of that community. In Town of Medley v. State, 162 So.2d 257 (Fla. 1964), this Court said:
We have consistently ruled that questions of business policy and judgment incident to the issuance of revenue issues are beyond the scope of judicial interference *19 and are the responsibility and prerogative of the governing body of the governmental unit in the absence of fraud or violation of legal duty. State v. City of Daytona Beach, 1934, 118 Fla. 29, 158 So. 300; State v. Florida State Turnpike Authority, Fla. 1961, 134 So.2d 12, and State v. Dade County, Fla. 1962, 142 So.2d 79.
In State v. Dade County, supra, Mr. Justice Drew speaking for this Court explained that the courts do not have the authority to substitute their judgment for that of officials who have determined that revenue certificates should be issued for a purpose deemed by them to be in the best interest of those whom they represent. The responsibility of the courts in such proceedings is primarily that of determining whether the issuing body has the power to act and whether it exercised that power in accordance with law.
A contrary holding would make an oligarchy of the courts giving them the power in matters such as this to determine what in their opinion was good or bad for a city and its inhabitants thereby depriving the inhabitants of the right to make such decisions for themselves as is intended under our system of government.
162 So.2d at 258-59. Under these principles, we are persuaded by the City's argument that the appellants, as citizens who oppose the project on policy grounds, are merely seeking a second hearing in this Court of policy matters already decided, after proper public hearings and discussion, by the City Council of Waldo. We therefore reject the appellants' last argument.
Finding that the City has the authority to issue the proposed bonds, that it has followed proper procedures in adopting the bond resolution, and that all the appellants' arguments concern either collateral or legislative policy matters, we affirm the judgment of validation.
It is so ordered.
ALDERMAN, C.J., and OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.