R. Dewey Burnsed City Attorney Leesburg
QUESTION:
May the City of Leesburg, in order to acquire title in fee simple absolute and unqualified to land upon which its municipal airport and airport facilities are located, trade its possessory interest in undeveloped property adjacent to such airport in exchange for a release of restrictions on and reverter rights in such airport property held by private persons?
SUMMARY:
The City of Leesburg is authorized to exchange its present possessory interest in undeveloped property adjacent to its municipal airport property for a release of restrictions on and reversionary rights or interest in the municipal airport property upon which the city airport and its airport facilities are located.
Your question is answered in the affirmative.
According to your letter, the City of Leesburg owns adjacent tracts of land subject to conditions and restrictions thereon that the property be used only for airport purposes; upon failure to so use the property, or any part thereof, such properties are to revert to the grantors. A large portion of the property conveyed to the city, subject to the restrictive conditions and reversions, is currently being used as the municipal airport. The remainder of the property conveyed remains essentially undeveloped, and the city has determined that such undeveloped property is not necessary for any municipal purposes. The city proposes to trade its present possessory interest in the undeveloped property to the grantors or holders of the reversionary interests, in exchange for their release of the restrictions and reversionary interests in the airport property, in order to obtain title in fee simple absolute and unqualified to the airport property. Such exchange will enable the city to apply for and receive federal funding for airport development.
The Municipal Home Rule Powers Act (Ch. 166, F. S.) grants to municipalities broad home rule powers. Section 166.021(1) states:
 As provided in s. 2(b), Art. VIII of the State Constitution, municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law.
Under this broad grant of powers, municipalities have the power and authority to acquire and dispose of real property or interest therein for municipal purposes by means of an exchange of property, so long as such method of acquisition and disposal of municipal real property is for a valid municipal purpose and is not expressly prohibited by law. Cf. Tweed v. City of Cape Canaveral, 373 So.2d 408, (4 D.C.A. Fla., 1979), and State v. City of Sunrise, 354 So.2d 1202 (Fla. 1978). Whether or not such method of acquisition and disposition of municipal real property is for a valid municipal purpose and in the best interest of the city is a determination that the governing body of the city must make, based upon such considerations as the need of the city's property for future municipal use, the consideration, and the benefits to insure to the city from the discharge of the reversionary or other lesser interests and rights in and restrictions on the use of such airport property. Such determinations involve factual and policy considerations and mixed questions of law and fact which are beyond my authority to make or resolve. However, so long as the city does not act arbitrarily, unreasonably, or in bad faith, its decision to acquire or dispose of real property or interest therein, by way of an exchange of property, is conclusive and will not be interfered with by the courts. Compare Dallas Inv. Co. v. Peace, 190 So. 607 (Fla. 1939); Bailey v. City of Tampa,111 So. 119 (Fla. 1926); Town of Riviera Beach v. State, 53 So.2d 828
(Fla. 1951); Griffis v. City of Fort Lauderdale, 104 So.2d 33
(Fla. 1958); and Crowe v. City of Jacksonville Beach,167 So.2d 753 (1 D.C.A. Fla., 1964). Further, I am unaware of any constitutional or statutory limitation on the power of the municipalities to acquire and dispose of property or interests in property, for municipal purposes, by way of an exchange of property.
Section 2 of the Charter of the City of Leesburg, Ch. 9820, 1923, Laws of Florida, which was converted into city ordinances, subject to repeal or modification by s. 166.021(5), F. S., expressly grants to the city government the power to acquire, hold, and dispose of real property. Section 2 of the charter provides, interalia:
 Said corporation . . . may acquire, receive, hold and sell, let or otherwise dispose of property, real or personal or mixed when expedient or necessary for municipal purposes, whether such property be within or beyond the corporate limits of said city . . . .
Although s. 2, Ch. 9820, does not expressly include `exchange of property' as a method or mode of acquiring and disposing of real property or an interest therein, s. 2 does authorize the City of Leesburg to `purchase . . . acquire . . . sell . . . or otherwise dispose of property, real or personal . . . .' A definitional meaning of acquire is `to gain by any means,' and acquisition is the act by which one acquires or procures the property in anything. Black's Law Dictionary (4th Rev. ed. 1968). A municipality may acquire lands for public purpose by any
recognizable method (grant, deed, condemnation, gift, dedication, etc.), including `exchange of property.' 63 C.J.S. MunicipalCorporations s. 957. `Exchange' is defined in Black's as the act of giving or taking one thing for another; to barter or to swap, and in conveyancing a material grant of equal interest. `Exchange' is also recognized as two sales or a double sale, and an exchangeof real estate is as to each one of the parties a sale and purchase. 33 C.J.S. Exchange of Properties s. 1. Based on the foregoing, it would, therefore, appear that the general authorization under s. 2, Ch. 9820, to `acquire . . . property real or personal' would include any recognizable method of acquisition of real property, including `exchange of property.'See 60 A.L.R.2d, p. 200, and 63 C.J.S. Municipal Corporation s. 574. Further, both purchase and sale are recognized in an `exchange of property,' and s. 2 expressly authorizes the city to `purchase . . . and sell . . . property, real or personal . . . .'
Chapter 332, F. S., cited as the `Airport Law of 1945,' grants to municipalities the authority to acquire property, real or personal, by purchase, gift, devise, lease, or other means for the purpose of establishing, constructing, enlarging, and improving airports and other air navigation facilities. Section 332.02. Section 332.08(4) provides for the sale or lease of any property, real or personal, acquired for airport purposes and belonging to the municipality, which, in the judgment of its governing body, may not be required for aeronautic purposes; and s. 332.08(5) authorizes municipalities to exercise all powers necessarily incidental to the exercise of the general and special powers granted by Ch. 332.
Based on the foregoing considerations and cited legislative and judicial authorities, I conclude that the City of Leesburg is authorized to exchange its present possessory interest in undeveloped property adjacent to its municipal airport property for a release of restrictions on and reversionary rights or interest in the municipal airport property upon which the city airport and its airport facilities are located.
Prepared by:
John W. Williams Assistant Attorney General